United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ceneca Valdez, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-20647-Civ-Scola |
| Miami-Dade County, Defendant. | ) |
| | ) |

**Order Granting the Defendant's Motion for Summary Judgment**

Now before the Court is the Defendant Miami-Dade County's motion for summary judgment. Miami-Dade County (the "County") argues that it is entitled to summary judgment on all four counts of the Complaint filed by the Plaintiff Ceneca Valdez. The Court agrees and therefore **grants** the County's motion for summary judgment (**ECF No. 26**).

At the outset, the Court notes that Valdez failed to file a statement of material facts as required by Local Rule 56.1(a)(1). The effect of failing to controvert the County's undisputed facts is that the County's statement of undisputed facts (ECF No. 25) "may be deemed admitted" if the Court finds that the facts are supported by properly cited record evidence and that no exception under Federal Rule of Civil Procedure 56 applies. S.D. Fla. Local Rule 56.1(c).

1. **Factual Background**

Ceneca Valdez was employed by the County as a correctional counselor from July 2016 until July 21, 2017. (ECF No. 25 at ¶ 1.) Valdez initially worked at the Pre-Trial Detention Center ("PTDC") with Reynaldo Romero serving as her direct supervisor. (*Id.* at ¶¶ 4-5.) Then, at the end of October or the beginning of November of 2016, she began working at the Turner Guilford Knight Correctional ("TGK") Center with Joel Botner serving as her direct supervisor. (*Id.* at ¶¶ 10, 12, 14.) In March 2017, she returned to PTDC because that facility had a shortage of counselors. (*Id.* at ¶¶ 15-16.) Valdez's duties were the same at both locations, and her duties were the same as all of the other correctional counselors. (*Id.* at ¶¶ 10, 12.) Commander Terry Brown supervised both Romer and Botner. (*Id.* at ¶ 14.)

Throughout her time as a corrections officer, Valdez experienced numerous instances where inmates masturbated in her presence. (*Id.* at ¶ 38.) Other correctional counselors were experiencing and reporting similar types of masturbation incidents. (*Id.* at ¶ 39.) Valdez created reports of the incidents of

sexual misconduct, which she turned in to her supervisor and later to the County during discovery. (*Id.* at ¶ 41-42.) Specifically, she reported the following instances:

- On August 31, 2016, Valdez reported to Corporal Cannon and Romero that she observed inmate Kristopher Littles masturbating. (*Id.* at ¶ 44.)

- On October 14, 2016, Valdez reported that inmate Derrick McCray stuck his penis through the bars and stroked it with his right hand while she was doing her walk. (*Id.* at ¶ 45.)

- On December 7, 2016, Valdez reported that inmate Bernard King "decided to masturbate" and she witnessed the act while conducting her rounds. (*Id.* at ¶ 46.)

- On January 31, 2017, Valdez reported inmate Andre Brown masturbating in cell 5316 while helping inmate from cell 5317. (*Id.* at ¶ 47.)

- On March 17, 2017, Valdez reported witnessing three more incidents while conducting her duties in front of cell 5B1: (1) inmate Jonathan Morris sticking his penis out through the cell bars and moving it in an upward-and-downward motion and (2) inmate Errol A. Latson and (3) inmate Samuel Hayes masturbating by the shower and later working his way towards the iron bars in the dayroom, continuing to masturbate and stroke his penis in an upward-down motion. (*Id.* at ¶ 48.)

The County has policies that address these instances of sexual misconduct. On April 16, 2014, Daniel Junior, as Acting Assistant Director, issued a directive updating its existing policy on inmate sexual misconduct, requiring that any inmate that subjects a correctional employee to lewd exhibitionism and/or masturbation be disciplined in accordance with Departmental Standard Operating Procedure 16-001 and subject to criminal prosecution. (*Id.* at ¶ 52.) The County provided the inmates with a copy of its Inmate Handbook, which contains this policy, during orientation. (*Id.* at ¶ 53.) The handbook states that when an inmate subjects the staff to lewd exhibitionism or masturbation, they may be criminally prosecuted, subjected to

30 days of disciplinary confinement, loss of up to 30 days of gain time earned, or loss of one or more privileges for up to 30 days. (*Id.* at ¶ 55.) Each time an incident is reported, the County forwards the incident report, witness statements, and all other supporting documentation to the State Attorney's Office for possible criminal action against the inmates. (*Id.* 61.)

Police came in response to one of Valdez's reports. They took down her name and told her the State Attorneys would be reaching out to her regarding new charges. (*Id.* at ¶ 62.) One of the inmates that Valdez reported was tried for the masturbation incident, and Valdez testified at his trial. (*Id.* at ¶ 64.) In other cases, inmates were charged and pled guilty. (*Id.* at ¶ 65.)

Romero, Botner, and Commander Brown never told Valdez she should not be making inmate masturbation reports. (*Id.* at ¶¶ 58-60.) Male guards sometimes made comments to Valdez like "women shouldn't be working in the jails" or "You know you signed up to work here, this is what you get. Deal with it." (*Id.* at ¶ 69.) The only two guards at TGK or PTDC who told her not to report inmate masturbation were Officer Slowcum and Corporal Cannon. She reported Corporal Cannon's comments to Romero, and the County changed Corporal Cannon's shift. (*Id.* at ¶¶ 69, 74-78.) She never worked with Corporal Cannon again. (*Id.* at ¶ 77.) At her deposition she could not remember if she mentioned Officer Slowcum's comments to Botner. (*Id.* at ¶ 81.) Botner and Valdez requested a meeting with the lieutenants and Captain Brown, and at the meeting, the Captain told everyone to treat the counselors with respect. (*Id.* at ¶ 82.)

Valdez claims that Joel Botner, John Johnson, and Daniel Junior retaliated against her for reporting the masturbations by firing her. (*Id.* at ¶ 90.) Valdez was not the only counselor reporting masturbation incidents; Tiffany Garret, another counselor, reported all the masturbation incidents she experienced. (*Id.* at ¶¶ 91-92.) Garrett did not get fired. (*Id.* at ¶ 93.) Valdez signed a Charge of Discrimination against the County. (*Id.* at ¶¶ 96-97.) The Equal Employment Opportunity Commission issued Valdez a Right to Sue Letter dated November 13, 2018. (*Id.* at ¶ 100.) She filed this suit on February 19, 2019, asserting claims for sexual harassment under Title VII, sexual harassment under the Florida Civil Rights Act of 1992, equal protection under 42 U.S.C. § 1983, and retaliation under Title VII. (ECF No. 1.)[1]

---

[1] Valdez's Florida Whistleblower Act claim was previously dismissed. (*See* ECF No. 10.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Analysis

The County argues that it is entitled to summary judgment because Valdez's claims are time-barred, the undisputed facts demonstrate that the County cannot be held liable for sexual harassment, and the undisputed facts show that the County did not retaliate against Valdez. The Court addresses each in turn.

#### A. Valdez's claims are time-barred.

Title VII actions "may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge." *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). Generally, "statutory notification is complete only upon actual receipt of the right to sue letter." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005). However, the Eleventh Circuit has adopted a test where "actual knowledge on the part of

the complainant that the EEOC has terminated its investigation of her claim, as evidenced by [a] request for [a right-to-sue] letter, may be sufficient to cause the time for filing to begin running within a reasonable time after written notice of complainant's right to sue has been mailed." *Id.* In order for Valdez's Title VII claims to be timely, she "has the initial burden of establishing that [she] filed [her] Complaint within ninety days of [her] receipt of the EEOC's right-to-sue letter." *Green v. Union Foundry Company*, 281 F.3d 1229, 1233 (11th Cir. 2002). Valdez has carried this burden because she presented evidence that she did not receive the letter until November 21, 2018 (which is within 90 days of her filing suit). (*See* ECF No. 33-2.) Once the Defendant contests this issue, the Plaintiff has the burden of establishing that she met the ninety-day requirement. *Green*, 281 F.3d at 1234.

The County argues that Valdez received actual notice prior to her receipt of the letter because the language in the notice itself, which reads ". . . and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action . . ." (ECF No. 33-1.) The County argues that because Valdez's lawyer specifically requested the right-to-sue letter, Valdez must have already had notice that EEOC had terminated its investigation. The Eleventh Circuit has held that "actual knowledge on the part of a complainant that the EEOC has terminated its investigation of her claim, as evidenced by her request for [a right-to-sue] letter, [is] sufficient to cause the time for filing to begin running." *Kerr*, at 954 (affirming the district court's grant of summary judgment in favor of the Defendant because the complaint was untimely since it was not filed within 90 days of her requesting a right to sue letter); *see also*, *Waring v. Miami-Dade County*, 172 F. Supp. 3d 1343 (S.D. Fla. 2016) (Ungaro, J.) (90 days began when the Plaintiff spoke with the EEOC investigator regarding the right-to-sue letter being sent to the wrong address). The County successfully pointed to evidence that Valdez received actual notice when she requested that the EEOC send the letter, and that this notice can trigger the 90-day time limitation on filing suit.

Because the County has contested the issue, the ultimate burden to establish that Valdez did not receive actual notice shifts to her. *Green*, 281 F.3d at 1234. In Valdez's response, she does not deny that she received actual notice before receiving the letter in the mail, nor does she deny that she (through her attorney) requested that the EEOC send her a copy of the letter. (*See* ECF No. 33.) Crucially, she does not point to any evidence that she did not receive notice before her receipt of the right-to-sue letter. Therefore, she failed to carry the ultimate burden of establishing that she did not receive actual notice. The 90-day time limit began to run when Valdez requested that the EEOC send her the right-to-sue letter. This date preceded November 13, 2018, which is the date

that the EEOC sent the letter. Because she failed to file suit before February 11, 2019, or 90 days from November 13, 2018, her claims are time-barred.

Like the lower court in *Kerr*, this Court may grant summary judgment for the County on this basis alone. 427 F.3d 947, 952 (11th Cir. 2005). However, the Eleventh Circuit has held the 90-day notice requirement "is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569-70 (11th Cir. 1996). The County did not argue that Valdez received actual notice before receiving the letter in the mail until its reply (ECF No. 34), and therefore Valdez did not have an opportunity to respond to those arguments. Therefore, in an abundance of caution, the Court will address the County's remaining arguments on the merits.

### B. The County is not liable for sexual harassment.

Title VII prohibits employers from discriminating against any individual with respect to their compensation, terms, conditions, or privileges of employment because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment can constitute discrimination on the basis of sex under Title VII. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). To demonstrate sexual harassment, Valdez must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding Miami-Dade County liable. *Id.* The same five elements are required to establish a sexual harassment claim under § 1983. *Howard v. City of Robertsdale*, 168 Fed. App'x 883, 890 (11th Cri. 2006). A correctional department can be liable for failing to remedy a sexually hostile work environment that male inmates created for female employees. *See, e.g., Beckford v. Dep't of Corr.*, 605 F.3d 951 (11th Cir. 2010).

"When, as here, the perpetrator of the harassment is not the plaintiff's supervisor, the employer will be held directly liable only if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Wilcox v. Corrections Corp. of Am.*, 892 F.3d 1283, 1287 (11th Cir. 2018). Here, the undisputed facts demonstrate the County took prompt remedial action to address the harassing conduct. The undisputed record shows that Miami-Dade had a policy to address inmate sexual misconduct, and the inmates were provided written notice of this policy. (ECF No. ¶ 52-53.) The policy required inmates who subjected employees to masturbation to be disciplined and to be subjected to criminal prosecution. (*Id.* at ¶ 55.) Pursuant to the policy, the

offending inmates were reported to the police and the State Attorney's Office. (ECF No. 25 at ¶ 61.) The police opened a case in response to at least one of Valdez's inmate masturbation reports. The State Attorney's Office charged multiple of the offending inmates. One of the inmates she reported was tried for masturbating in her presence, and several other inmates pled guilty for their offensive conduct toward her. (*Id.* at ¶¶ 62-65.) Valdez's direct supervisors (Romero and Botner) and their supervisor (Commander Brown) never discouraged Valdez from reporting inmate masturbation. (*Id.* at ¶¶ 58-60.)

Valdez's response does not point to any record evidence from which a reasonable juror could infer that the County failed to take prompt remedial action. Instead, she points to her Complaint, arguing that she alleged that the County did not take immediate action, but allegations are not sufficient to defeat summary judgment. (*See* ECF No. 33 at 6.) Valdez fails to demonstrate that there is any dispute of material fact, and therefore, the Court concludes that the County took prompt remedial action after learning of the inmates' harassment. *Cf. Blackmon v. Wal-Mart Stores E., L.P.*, 358 Fed. App'x 101, 104 (11th Cir. 2009) (affirming the district court's grant of summary judgment because there is no dispute that Wal-Mart took prompt remedial action).

### C. The County did not retaliate against Valdez.

The *McDonnell Douglas Corp. v. Green*, burden-shifting framework applies to Title VII retaliation cases. 411 U.S. 792 (1973). Under that framework, Valdez "must first establish a prima facie case of retaliation by showing that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) she established a causal link between the protected activity and the adverse action." *Jacomb v. BBVA Compass Bank*, 791 Fed. App'x 120, 123 (11th Cir. 2019). If Valdez meets this burden, "the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If the County carries that burden, Valdez "must demonstrate that the employer's reason was merely pretext for retaliation." *Id*.

The County asserts that it fired Valdez in July 2017 because she did not even attempt the performance plan given to her on May 18, 2017. (ECF No. 26 at 8.) Valdez has offered no evidence to show that this reason is pretextual as required by the *McDonnel Douglas*, burden-shifting framework. In her response, she asserts that the allegations in her Amended Complaint—that the "Defendant had no legitimate or lawful reason for taking the retaliatory actions that it did against Plaintiff"—prevent the Court from granting summary judgment to the County. (ECF No. 33 at 8-9.) Again, allegations alone are insufficient at this stage, and to defeat summary judgment, Valdez must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and

admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. Because Valdez has failed to demonstrate (or point to any record evidence to support her allegation) that the County's proffered reason was merely a pretext, the Court concludes that the undisputed facts show that the County did not retaliate against Valdez. Moreover, the County has showed that Tiffany Garret, another counselor, reported all the masturbation incidents that she experienced, (*Id.* at ¶¶ 91-92.) and that Garrett did not get fired. (*Id.* at ¶ 93.)

### 4. Conclusion

In sum, the Court **grants** the County's motion for summary judgment (**ECF No. 26**). The Court directs the **Clerk** to **close** this case. Any pending motions are denied as moot.

**Done and ordered** in chambers in Miami, Florida, on May 4, 2020.

Robert N. Scola, Jr.
United States District Judge